# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO. 3:06-CR-00417-FDW

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>STACY ARTHANIEL THREATT, )<br>)<br>**Defendant.** )<br>) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motions for Compassionate Release, (Doc. Nos. 105, 109, 117). This matter has been fully briefed, (Doc. Nos. 106, 107, 110, 112, 113, 116), and is ripe for ruling. For the reasons set forth below, Defendant's Motions are DENIED.

## I. BACKGROUND

In April 2006, Defendant, Donta Lamar Johnson, and a juvenile robbed a Petro Express on Randolph Road in Charlotte, North Carolina. (Doc. No. 88, ¶ 4). Defendant, Johnson, and the juvenile arrived at the gas station together; and Johnson entered the store, briefly returned to the car used by the three accomplices, and then re-entered the store. Id. Defendant then entered the store, armed with a shotgun and covering his face. Id. Defendant shoved the shotgun into the clerk's chest and said, "Give me the money." Id. Johnson grabbed the cash register and the two returned to the car, which the juvenile then drove away. Id.

Police quickly arrived on the scene, and an officer located the suspect vehicle in the nearby Grier Heights neighborhood. Id. Officers detained the juvenile, who admitted his role in the robbery and identified Defendant and Johnson as the other two participants. Id. Later that day, law enforcement officers arrested Defendant on unrelated misdemeanor warrants. Id. at ¶ 5. During an interview, Defendant admitted to committing the robbery with Johnson. Id.

1

Two days later, officers received information that the shotgun used in the robbery was located at a residence in the Grier Heights neighborhood where officers found the suspect vehicle the night of the robbery. Id. Officers conducted a consent search at the residence and found a shotgun under some clothes in a closet under a staircase. Id.

A grand jury indicted Defendant, charging him with Hobbs Act robbery and aiding and abetting the same; brandishing a firearm in furtherance of a crime of violence and aiding and abetting the same; and possession of a firearm by a felon. (Doc. No. 1). Defendant pleaded guilty to all three counts without a written plea agreement. (Doc. No. 28, p. 3–4). This Court sentenced him as a career offender to 288 months of imprisonment. (Doc. No. 88, ¶¶ 28, 46, 77–78); (Doc. No. 38). The Fourth Circuit affirmed his sentence on appeal. United States v. Threatt, 306 F. App'x 817, 818 (4th Cir. 2009). In 2016, Defendant filed a motion to vacate, challenging his conviction for brandishing a firearm in furtherance of a crime of violence in light of Johnson v. United States, 576 U.S. 591 (2015). Threatt v. United States, No. 3:16CV373, 2020 WL 814316, at 2 (W.D.N.C. 2020). This Court dismissed his motion, rejecting his assertion that aiding and abetting Hobbs Act robbery is not a crime of violence. Id. at 3.

This is not Defendant's first time seeking compassionate release. In 2021, this Court denied his pro se motion, concluding that Defendant's prior health conditions and the threat of COVID-19 did not establish extraordinary and compelling reasons for release and—even assuming they did—concluding the factors listed in 18 U.S.C. § 3553(a) did not weigh in favor of release. (Doc. Nos. 89, 98). The Fourth Circuit Court of Appeals affirmed that decision, (Doc. No. 103). See United States v. Threatt, No. 21-6265, 2021 WL 4739609 (4th Cir. Oct. 12, 2021) (declining to address this Court's analysis of Section 3553(a) factors because Defendant did not preserve them on appeal).

2

Case 3:06-cr-00417-FDW   Document 120   Filed 10/04/23   Page 2 of 14

While in BOP custody, Defendant has not received any disciplinary infractions, and he has completed a handful of educational programs. (Doc. No. 106). Defendant now seeks a reduction to "time served," and argues that if he were sentenced today, he would receive a shorter sentence as he would no longer be classified as a career offender and because he suffers from medical conditions that make him more susceptible to severe illness from COVID-19. Defendant is 49 years old, is currently incarcerated at FCI Beckley, and has served approximately 208 months of his 288-month sentence, or approximately 72% of the sentence as imposed. Based on good-time credit, he has a projected release date of September 14, 2026.

## II. STANDARD OF REVIEW

Defendant's motions seek a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). In 2018, Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence from the court for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction.'" Id. (quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)). "[D]istrict courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A); citing Kibble, 992 F.3d at 331. Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentence avoidable and sentencing ranges, and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

Here, the record is clear Defendant exhausted his administrative remedies as to at least one of his pending motions. (Doc. Nos. 105, 106). The Government argues Defendant's subsequent motions, (Doc. Nos. 109, 117), fail to demonstrate he exhausted his administrative remedies.

4

Case 3:06-cr-00417-FDW   Document 120   Filed 10/04/23   Page 4 of 14

These subsequent motions, however, tend to reassert and supplement the arguments in Defendant's initial motion for compassionate release, (Doc. No. 105). (See Doc. No. 109, p. 1 ("Comes now Stacy Arthaniel Threatt, defendant, pro se, requesting the court to grant this motion as a *supplement* to defendants motion for compassionate release." (Emphasis added.)); Doc. No. 117, p. 1 ("Comes now Stacy Threatt, defendant, pro se, requesting the court to grant this *supplement* to [his] motion for compassionate release." (Emphasis added)). Under this record and because the subsequent motions "supplement" the initial filing, the Court will conclude Defendant has satisfied the exhaustion requirement for the pending motions. Thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release in light of the applicable § 3553(a) factors.

### III. ANALYSIS

Defendant contends his health conditions, his conditions of confinement, changes in sentencing laws, and his rehabilitation and family support constitute "extraordinary and compelling" reasons to reduce his sentence. Defendant argues the § 3553(a) factors counsel in favor of a reduced sentence and compassionate release, particularly given his post-sentencing rehabilitation. The Government disagrees that Defendant's articulated reasons rise to the level of "extraordinary and compelling," and asserts that even if they did, the sentencing considerations described in 18 U.S.C. § 3553(a) do not support a reduced sentence or compassionate release.

First, Defendant argues that his medical conditions, when coupled with the threat of the COVID-19 virus, constitute extraordinary and compelling reasons to reduce his sentence. In support, he asserts that "his health issues in his first compassionate release motion" present extraordinary and compelling reasons for relief, and he contends the instant motions provide

5

additional information that the Court found to be lacking when it ruled on his prior motion. (Doc. No. 105, p. 7).

In United States v. Brown, the Fourth Circuit affirmed the district court's holding that the risk posed by COVID-19, the defendant's medical conditions (high blood pressure and obesity), and the defendant's decision to refuse the COVID vaccine did not create an "extraordinary and compelling reason" for the defendant's release.[2] 78 F.4th 122, 129–30 (4th Cir. 2023). The court summarized relevant Fourth Circuit case law and explained the applicable standard:

> To establish that the risk posed by COVID-19 presents an "extraordinary and compelling reason" for release, a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that his preexisting medical condition increases his risk of experiencing a serious, or even fatal, case of COVID-19. While this inquiry is multifaceted and must account for the totality of the relevant circumstances, courts within the Fourth Circuit have looked to whether an inmate shows *both a particularized susceptibility* to COVID-19 *and a particularized risk* of contracting the disease at his prison facility.

Brown, 78 F.4th at 128 (cleaned up; emphasis added).

Here, Defendant contends his heart murmur, irregular heartbeat, latent tuberculosis, and prior spontaneous pneumothorax establishes a particularized susceptibility to serious health complications and/or death should he contract COVID. He contends his particularized risk is supported by data regarding the rate of COVID infections generally in the Bureau of Prisons ("BOP"), as well as specific information regarding the conditions at FCI McDowell.[3] As additional

---

[2] The court ultimately concluded the defendant's disparate sentence argument is relevant to both the "extraordinary and compelling reasons" inquiry and the § 3553(a) factors and held the district court's failure to engage with that argument at either step of the compassionate release analysis was error. 78 F.4th at 130-31 (explaining basis for vacating and remanding district court decision).

[3] In verifying information for this Order, the Court became aware that Defendant is no longer housed at FCI McDowell and has been transferred to FCI Beckley. (https://www.bop.gov/inmateloc/ visited 10/4/2023). It is possible, then, that Defendant's arguments regarding his risk at FCI McDowell are moot. And, Defendant has not supplemented his filings or made any argument to this Court that remaining in BOP custody at his new and current place of confinement poses a greater risk to him than would otherwise exist if he were released to the community. The Court's ruling here is therefore without prejudice to Defendant's ability to file a new motion for compassionate release should his health conditions and/or changed conditions of confinement support a different analysis of extraordinary and compelling

6

Case 3:06-cr-00417-FDW   Document 120   Filed 10/04/23   Page 6 of 14

evidence, he contends FCI McDowell's conditions have resulted in his contracting H. pylori bacteria, as well as his exposure to scabies and carbon monoxide poisoning. The Government disagrees, pointing to the lack of COVID cases at FCI McDowell, (see https://www.bop.gov/coronavirus/covid19_statistics.html; visited 10/4/2023),[4] Defendant's vaccination status, and lack of evidentiary support for complications related to his health conditions.

While Defendant's evidence tends to show a serious risk of severe complications from a COVID infection, Defendant has received the COVID vaccine and the COVID public health emergency ended,[5] two important factors that mitigate against his particularized susceptibility to COVID. Under this record, Defendant's alleged susceptibility to COVID does not present extraordinary and compelling reasons to reduce his sentence.

Even if Defendant conclusively established a particularized susceptibility to COVID, he has failed to show a particularized risk to severe infection. Nothing in the record suggests his current place of incarceration has failed to take appropriate measures to manage Defendant's medical conditions and nothing suggests the conditions of his current institution – such as uncontrolled spread of the virus or significant outbreaks – create a particularized risk of contracting the disease at his prison facility different than the risk outside the prison. Medical records do not indicate Defendant ever contracted or was treated for COVID while at FCI McDowell, which tends to show BOP is sufficiently controlling the spread of the virus and mitigates against a finding of particularized risk of contracting the disease while incarcerated. Additionally, the record fails to

---

reasons. See United States v. Bethea, 54 F.4th 826, 833 n.2 (4th Cir. 2022) (noting that § 3582(c)(1)(A) "does not prevent prisoners from filing successive motions" for compassionate release).

[4] The Court recognizes that at the date of this Order, FCI Beckley has one case of a positive inmate with zero cases of staff testing positive. See https://www.bop.gov/coronavirus/covid19_statistics.html; visited 10/4/2023.

[5] Since Defendant filed the instant motions, the U.S. national emergency to respond to COVID-19 has ended. National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

7

provide sufficient evidentiary support for Defendant's arguments that his conditions of confinement at FCI McDowell—namely the presence of carbon monoxide, exposure to H. pylori bacteria, scabies, and other hazards—constitute extraordinary and compelling reasons to reduce his sentence, particularly now that his place of incarceration has changed. If anything, the medical records indicate Defendant is receiving adequate medical care for the conditions described, including treatment to combat the H. pylori bacteria, (Doc. No. 110).

In sum, Defendant has failed to demonstrate that his medical conditions—considered separately and together with the impact of a potential COVID infection—create both a particularized susceptibility to COVID and particular risk inside his current place of incarceration. Therefore, his medical conditions, which are being managed by the BOP, do not establish extraordinary and compelling reasons and do not provide a sufficient basis for compassionate release *under this record*. See Brown, 78 F.4th at 128 (recognizing that while medical conditions might put a defendant at an increased risk of a severe COVID-19 infection, extraordinary and compelling reasons do not exist where that risk was mitigated by vaccine status and a defendant's failure to show a particularized risk of contracting the disease at facility where incarcerated); see also United States v. Jennings, No. 3:18CR34, 2023 WL 5017971, at *3 (E.D. Va. Aug. 7, 2023) ("The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. . . . Also, it is generally true that chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." (citations and quotations omitted)).

Next, Defendant asserts that "extraordinary and compelling reasons" exist for a grant of compassionate release based upon the Fourth Circuit decision, United States v. Green, 996 F.3d

176 (4th Cir. 2021), which found that Hobbs Act Robbery does not constitute a crime of violence for purposes of determining whether a defendant is a career offender under the Sentencing Guidelines.[6] Removal of the enhancement would result in a Guidelines range of 161 to 180 months of imprisonment. The Government argues Defendant's reliance on Green is misplaced because Green was sentenced after the 2016 Amendments to Section 4B1.2, which removed the residual clause that was present in the 2006 Guidelines under which Defendant was sentenced. See Amendment 798 (eff. Aug. 1, 2016); PSR ¶ 11. Because the Sentencing Guidelines are not subject to vagueness challenges, the Government contends the residual clause applied to Defendant, Beckles v. United States, 137 S. Ct. 886, 892 (2017), and encompassed his offense. See U.S.S.G. § 4B1.2(a)(2) (2006) (defining "crime of violence" to include offenses that in the typical case involve "conduct that presents a serious potential risk of physical injury to another"). Additionally, the Government asserts that Defendant's Hobbs Act robbery entailed the use of physical force against a person—shoving a firearm into the clerk's chest and demanding money—so that his sentence as a career offender does not render his sentence "unjust," as he alleges.

---

[6] To the extent Defendant's motions challenge the lawfulness of his prior sentence, the Fourth Circuit has held that compassionate release cannot be used to make a collateral attack on the lawfulness of a previously imposed sentence. United States v. Ferguson, 55 F.4th 262, 269-270 (4th Cir. 2022). The proper method to challenge the lawfulness of a sentence is under 28 U.S.C. § 2255. As the Ferguson court observed, "Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255 requirements." Id. at 270 (emphasis added). Consequently, Defendant's efforts to utilize compassionate release to challenge the lawfulness of his previously imposed sentence is improper. Instead, the Court considers Defendant's arguments as a basis to *reduce* his legally valid sentence based on the difference in penalties from the time he was sentenced and now. See Jennings, No. 3:18CR34, 2023 WL 5017971, at *5 ("Nonetheless, district courts are instructed to consider the case and the defendant on the day of sentencing whether at original imposition or at modification (if modification is permitted by law). Concepcion v. United States, 142 S. Ct. 2389 (2022). And, that requires district courts, when modifying a sentence, to consider changes in law as well as rehabilitation. Id. at 2402-04. Concepcion, of course, was decided, not under § 603 of the First Step Act, but under § 404. There is, however, no logical reason that Concepcion's fundamental underpinnings should not be applied in deciding § 603 motions.").

The Court agrees with Defendant that in light of Green, if Defendant were sentenced today, his conviction for Hobbs Act robbery would not constitute a crime of violence under the current version of U.S.S.G. § 4B1.1(b). 996 F.3d at 178. This fact, however, is not dispositive. While Defendant is correct that, if he were sentenced today, his Hobbs Act robbery conviction may no longer be a qualifying crime of violence for career offender status, he would remain a career offender. This is because his conviction for possession of a firearm in relation to and in furtherance of a crime of violence under 924(c) is arguably still a crime of violence. Recent case law of the Fourth Circuit, in United States v. Mathis, has indicated that Hobbs Act Robbery remains a proper predicate offense for a § 924(c) conviction and that a § 924(c) conviction is considered a crime of violence. 932 F.3d, 242, 265-66 (4th Cir. 2019); see also, United States v. Bond, 56 F.4th 381, 382-83 (4th Cir. 2023); United States v. Vanderhorst, 2021 WL 2947728 (4th Cir. 2021); United States v. Bennett, 848 Fed. Appx. 596 (4th Cir. 2021) (unpublished) (holding that Hobbs Act robbery is a valid § 924(c) predicate, citing Mathis). Defendant's 924(c) conviction in connection with his Hobbs Act robbery, therefore, remains as an independent basis for career offender enhancement. Accordingly, Defendant's guidelines sentence range would be the same today as it was at his original sentencing. He therefore cannot establish that extraordinary and compelling circumstances exist warranting relief.

As a third basis for the motion, Defendant points to his post-sentencing rehabilitation evidence, which he contends demonstrates extraordinary and compelling reasons to reduce his sentence. While such conduct is appropriate to consider as part of the analysis, a clean disciplinary record *alone* is insufficient to create eligibility for a reduced sentence because Congress has made clear that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a modification under section 18 U.S.C. § 3582(c)(1)(A). Therefore,

Defendant's stellar disciplinary record, without more, fails to establish extraordinary and compelling circumstances warranting a sentence reduction.

Without the existence of "extraordinary and compelling reasons," Defendant is not eligible for a sentence reduction under Section 3582(c)(1)(A).[7]

Assuming *arguendo* that Defendant could establish "extraordinary and compelling" circumstances, the Court concludes his motion would still be denied based on an analysis and balancing of the § 3553(a) factors.[8] As discussed above, Defendant remains a career offender. Should this not be the case, the Court concludes that his sentence should not be reduced based on an analysis and balancing of the § 3553(a) factors because he still poses a danger—and great risk—to public safety. See United States v. Crumitie, No. 1:06-CR-271, 2022 WL 1809312, at *4 (M.D.N.C. June 2, 2022) (denying a defendant's § 3582 petition on the § 3553(a) factors because, even if "Hobbs Act robbery may no longer be a crime of violence for purposes of the enhancement in U.S.S.G. § 4B1.1, the crime Mr. Crumitie committed was, in fact, violent—he brandished a firearm, pointed the firearm at the victim, and threatened the victim."); see also United States v. Dewitt, No. 4:04-CR-00795-TLW-4, 2023 WL 2634497, at *5 (D.S.C. Mar. 24, 2023), reconsideration denied, No. 4:04-CR-00795-TLW-4, 2023 WL 4034548 (D.S.C. June 15, 2023).

The nature and circumstances of Defendant's offenses here are violent. Around 2:00 a.m., Defendant—along with a juvenile and another accomplice—entered the Petro Express with his

---

[7] United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023) ("A defendant is *eligible* if the court finds 'extraordinary and compelling reasons warrant such a reduction.'" (emphasis added; quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)); see also United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("Thus, as it currently stands, a court may find a defendant who filed a motion *eligible* for a sentence reduction after finding only that such a reduction is warranted by extraordinary and compelling reasons, which are not statutorily detailed." (emphasis added)).

[8] In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the Court considers "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need to avoid unwarranted sentence disparities;" and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

face covered and armed with a shotgun. (Doc. No. 88, p. 3). He stuck the shotgun into the chest of the clerk on duty at the time and demanded money. (Id.). Defendant used sufficient force to cause bodily injury, including marks on the clerk's neck and side where the shotgun had been jammed into him. (Id., p. 4). After one of his accomplices obtained cash, the three men exited the store, and the juvenile drove the car away from the scene. (Id., p. 3). Later that day, Defendant was arrested on unrelated misdemeanor warrants. During an interview, Defendant admitted to his involvement in the robbery and was transported to intake.

At the time Defendant committed the instant offenses, he was 32 years old and had multiple prior convictions, including prior convictions for possession with intent to sell/deliver cocaine (three counts), felony possession of cocaine (three counts), and selling cocaine, which earned him 21 criminal history points and a criminal history category of VI. (Id. p. 10). As a result of these convictions, he had served time in prison, yet his incarceration did not deter him from continuing criminal activity—*violent* criminal activity—upon release.

Here, Defendant's strongest arguments in support of a reduced sentence hinge on his clean disciplinary record during his seventeen years of imprisonment and his community support. With respect to Defendant's efforts at rehabilitation, the Fourth Circuit has held that district courts must provide an individualized explanation for denying relief when the defendant presents evidence of post-sentencing rehabilitation. High, 997 F.3d at 189-90 ("[A]s Chavez-Meza makes plain, there are cases in which a minimal explanation suffices, while in other cases, more explanation may be necessary." (citing Chavez-Meza v. United States, 138 S. Ct. 1959 (2018)); cf. United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021) (requiring additional explanation of district court's reasons for rejecting nearly two decades of prison programming and rehabilitative efforts).

Defendant's post-sentencing rehabilitation is commendable, particularly the lack of any disciplinary infractions while in custody and the letters of support submitted by his fellow inmates and family members, (Doc. No. 107). The Court specifically commends Defendant for his educational achievements, including his work towards his Associates Degree and for completing drug-abuse treatment. These accomplishments will serve him well upon release. The Court also commends Defendant for not receiving any disciplinary infractions while incarcerated and for serving as a model for those incarcerated alongside him. 28 U.S.C. § 994(t) (emphasis added). Defendant's clear disciplinary record over the past 19 years suggests he has improved his respect for the law; however, "a defendant's compliance with prison rules is a minimum expectation of incarceration, not an extraordinary circumstance." United States v. Artis, No. 3:13-CR-218-MOC-DSC-1, 2023 WL 2469029, at *4 (W.D.N.C. Mar. 10, 2023). As stated above, "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a modification under section 18 U.S.C. § 3582(c)(1)(A). The Court concludes Defendant's rehabilitation efforts and support from his family, both of which weigh favorable to him, are achievements that will serve him well when he is released in a few years; however, they do not outweigh the nature and circumstances of the offense, his extensive criminal history—including the fact his prior incarceration did not deter him from engaging in the more violent conduct in the case at bar, and the need to promote respect for the law. Nor would it reflect the seriousness of his offenses, provide just punishment, or deter similar conduct.

## IV. CONCLUSION

In addressing changes created by Congress as a result of the First Step Act, the Supreme Court has reiterated the wide discretion afforded to district judges in sentencing and in considering motions for sentence modification. "Put simply, the First Step Act does *not require* a district court

to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison counsels against providing relief. . . . All that is required is for a district court to demonstrate it has considered the arguments before it." Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2404-05 (2022) (emphasis added).

Defendant failed to show extraordinary and compelling reasons for a sentence reduction under this record.[9] While Defendant's efforts during his imprisonment to better himself and contribute meaningfully to the prison population are recognized and commended, his prior violent conduct, his drug trafficking, his otherwise extensive criminal history, his disrespect for the law, and the need to protect the public from him, as well as the other 3553(a) factors, all strongly support the Court denying his Motions for Compassionate Release. Under the current record, the sentence as imposed remains sufficient, but not greater than necessary, to advance the goals of sentencing set forth in § 3553(a).

**IT IS, THEREFORE, ORDERED** that the Motions for Compassionate Release, (Doc. Nos. 105, 109, 117), are DENIED.

**IT IS SO ORDERED.**

Signed: October 4, 2023

Frank D. Whitney
United States District Judge

---

[9] As noted above, this ruling does not foreclose to Defendant's ability to file a new motion for compassionate release should his health conditions worsen and/or changed conditions of confinement support a new consideration of the analysis of extraordinary and compelling reasons. See United States v. Bethea, 54 F.4th 826, 833 n.2 (4th Cir. 2022) (noting that § 3582(c)(1)(A) "does not prevent prisoners from filing successive motions" for compassionate release).